PATRICK MASTERSON *vs.* NAMQUIT WORSTED MILLS.

DECEMBER 13, 1910.

PRESENT:  Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1) *Negligence.  Master and Servant.  Assumed Risk.  Defective Floor.*

Plaintiff, in going to the rear of his loom, turned his ankle, and in falling, his arm was caught in the belt, conveying power to the loom and injuring him.

Plaintiff claimed that he was injured through an inequality in the floor, unnoticed by him, but it appeared that he must have travelled over, or in close proximity to, this identical spot many thousand times without turning his ankle, the floor being in the same condition as it was when he went there to work and in addition, plaintiff swept that portion of the floor each night.

*Held*, that the accident from that cause was not one that a reasonable and prudent man could be expected to foresee the probability of, and therefore defendant was not negligent in constructing or maintaining the floor in that manner.

*Held*, further, that, assuming the negligence of defendant in that respect, the risk was obvious and assumed.

*Held*, further, that although plaintiff testified that he did not notice the defect, yet, as it would have been evident to his senses if he had used them, he could not avail himself of this excuse.

TRESPASS ON THE CASE for negligence. Heard on exceptions of plaintiff, and overruled.

DUBOIS, C. J. The plaintiff, a weaver of twenty-two years' experience, who had been employed upon one of the defendant's power looms continuously for over seven months, at half-past four o'clock on the afternoon of Monday, May 6, 1907, which was a dark and stormy day, in going around from the front to the rear of his loom, for the purpose of tying a broken thread in the fabric which he was weaving, turned his ankle and fell in such a manner that his left arm was caught by the belt, whereby power was conveyed to his loom, and was drawn in and crushed between the belt and the loose pulley, upon which it was then running, the plaintiff having shifted the belt from the tight to the loose pulley, to stop the loom, before he attempted to tie the broken thread. Two feet from the back of his loom was the back of another loom, and each loom was propelled by means of a belt running from a pulley at the end of the loom, and about eleven inches from the floor, to shafting above the main alley, which was a passageway at the end of the looms referred to, and so called to distinguish it from the weaver's alley or space between the looms. This shafting was about nine feet above the floor and ran parallel with the main alley and about four feet from the end of the looms, so that each belt in operation ran diagonally out into the main alley. Neither belt was

boxed in or covered in any way, and in going from the front to the rear of the looms the weavers had to pass between the moving belts. It appears that it was necessary to do this every time a thread would break in the course of the weaving, which would happen at least once in half an hour, under the most favorable conditions, and very often much more frequently.

There is no evidence that the plaintiff ever had turned his ankle in any of the eight or nine thousand times that he must have gone, in the course of his employment by the defendant, from the front to the rear of his loom and, in returning, from the rear to the front thereof, upon which occasions he must, necessarily, in the limited space between the belts, have travelled upon, over, or in close proximity to the identical spot upon which his ankle was turned. The testimony is to the effect that at the time of the accident the floor whereon the plaintiff fell was in the same condition as it was when he came there to work, save for the wear and tear incident to its use, in which the plaintiff largely participated. The plaintiff, *inter alia*, testified, concerning the accident, as follows: "Q. What caused you to turn your ankle?   A. This board, I suppose, that was patched up, this bad place in the floor.   Q. What happened to you, did you slip on it, or what?   A. No, my heel, I thought, just went on the end of it and turned me sideways, and I went down on the belt." It appears that there was a corner of a plank which projected into the weaver's alley at the back of his loom. The plank was some three-quarters of an inch in thickness and formed part of a runway six feet wide in the main alley aforesaid, and was laid upon the original floor of the room, which had become worn in places and especially at the point where the projecting corner came. This corner was formed by the junction, at their ends, of two planks of unequal width, in such a manner as to leave the projecting corner, formed by the inequality, next to the weaver's alley. The plaintiff testified that he never noticed this corner until after the accident, although, in addition to passing and repassing it as often as he was obliged to do for the purpose of tying threads broken in the course of the weaving, every night he swept the

"flyings" from the weaver's alley into the main alley, where they were swept up by a boy: "Q. Did you sweep over this place where the patch in the board was? A. I swept the boards, everything around there, just with the broom, dusted it out only on Saturdays and then you clean the machinery." It is manifest that in any sweeping that would be effective in removing the flyings from the weaver's alley to the main alley it would be necessary to pay particular attention to corners and projections where such particles would be likely to accumulate, especially in a place where the floor was badly worn.

At the conclusion of the testimony the justice of the Superior Court presiding at the trial directed the jury to return a verdict for the defendant, upon the ground that the plaintiff assumed the risk of walking over the runway and the dangers incident thereto. To this ruling the plaintiff excepted, and the case is before this court upon that exception.

In order for the plaintiff to recover in this action it is necessary for him to prove, not only that he was in the exercise of due care at the time of the accident, but also that the defendant was negligent and that the negligence of the defendant was the proximate cause of the plaintiff's injury. If the defendant was negligent, its negligence consisted in joining and maintaining the planks in the runway so as to leave a corner thereof projecting into the weaver's alley over a worn place in the floor, upon which a person exercising due care would be likely to turn his ankle and be caught by a moving belt, and in not warning the plaintiff of such danger. If such danger existed, and the same was latent, then it was the duty of the defendant to warn the plaintiff of a dangerous condition of which it had knowledge and concerning which the plaintiff was ignorant. If, however, such danger did exist, but was patent or obvious to persons exercising their senses in the usual manner for the purposes of observation, then there would be no necessity to give warning of a danger so apparent. For example, the danger of being caught by the moving belts was perfectly obvious to the plaintiff, and he needed no warning to avoid that danger. The particular danger which the plaintiff complains he was subjected

to, concerning which no warning was given him, was the danger pertaining to the corner of the plank in the weaver's alley, viz.: the danger of having his ankle turned thereon and thereby being thrown against the moving belt. Can this be said to be such a known and appreciable danger that the defendant was bound to take cognizance of it before the happening of the accident? Would an ordinarily careful and prudent man anticipate the probability of such an accident resulting from such a cause? If not, then the defendant was not negligent in not foreseeing it. If the defendant could not be expected to foresee the danger it could not be expected to give warning thereof. It is a matter of common knowledge and universal experience that ankles will turn, and that sometimes it is difficult to ascertain the cause thereof. The ankle itself may be weak and liable to turn upon slight provocation, or the shoe upon that foot may be ill-fitting or worn at the side or heel and thus assist in turning the ankle, or there may be a combination of both; either the shoe or floor or both may have become slippery, so that, if the foot was not placed firmly upon the floor in walking, a turned ankle might result. Illustrations might be produced indefinitely. As ankles do turn and are liable to be turned upon the most scientifically constructed highways and floors, it is safe to assume that no highway or floor ever was or ever will be made with a view of preventing ankles from being turned thereon. Evidence that a person had turned his ankle upon a public highway would fall short of proof that the same was defective. In the case at bar no evidence was offered concerning the condition of the plaintiff's foot or foot-wear at the time of the accident. The plaintiff's testimony that he thought he stepped upon the projecting corner of the board in question and supposed that he turned his ankle in consequence thereof was not contradicted, and therefore he claims that the cause of the turning of his ankle may be said to be established. The plaintiff does not claim that there was upon that occasion anything peculiar, unusual, or different in his use of the weaver's alley in going to repair the broken thread than there was in the thousands of times that he had used it before;

neither does he claim that the board or floor was different in any respect at that time from its previous condition while he had been using it. In the circumstances of the case we are unable to say that a reasonable and prudent man could be expected to foresee the probability that such an accident would be likely to happen from that cause, and therefore we do not find that the defendant was negligent in constructing or maintaining the runway in the manner in which it did. Moreover, even if we could hold that the defendant was negligent in its construction and maintenance of the runway, and that it did create the danger in the weaver's alley of which the plaintiff complains, the result would be the same; for we are also of the opinion that the same was as obvious to the plaintiff as it was to the defendant, and that therefore there was no necessity to warn the plaintiff concerning the same, and that, as the danger was obvious to the plaintiff, he assumed the risk thereof. It is true that the plaintiff testified that he did not notice the corner, but it seems incredible that he should have passed over or near it and have swept around or about it as often as he did without seeing or feeling it; and as it appears that it would have been evident to his senses if he had used them, he can not avail himself of the excuse that he did not notice what must have been perfectly apparent.

The plaintiff's exception is therefore overruled, and the case is remitted to the Superior Court with direction to enter judgment on the verdict.

*James B. Littlefield, Walter H. Barney,* for plaintiff.
*Vincent, Boss & Barnefield,* for defendant.